NOT DESIGNATED FOR PUBLICATION

No. 116,355

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RICHARD S. GINGLES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Clay District Court; JOHN F. BOSCH, judge. Opinion filed July 7, 2017. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Richard E. James*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., POWELL and GARDNER, JJ.

*Per Curiam*: Richard S. Gingles pled guilty to one count of possession with intent to distribute methamphetamine under K.S.A. 2014 Supp. 21-5705(a)(3), a drug severity level 3 felony. The standard presumptive prison sentence for Gingles' conviction was 49 months. Gingles moved the sentencing court for a dispositional departure to probation. The court denied his motion. Gingles also moved the court for a durational departure. The State agreed with Gingles and recommended a downward durational departure to a prison sentence of 24 months. The court granted Gingles' motion for downward durational departure and sentenced him to 24 months' imprisonment. Gingles now appeals, arguing that the district court abused its discretion in failing to grant his motion for dispositional departure. Gingles specifically argues that the district court's actions were unreasonable

1

to such a degree that no person would agree with them. For reasons set forth below, we reject this argument. Accordingly, we affirm.

Early in the morning of May 30, 2015, around 3 a.m., a deputy from the Clay County Sheriff's Department received a report of a suspicious individual in an alley behind a local bar. While investigating, the deputy saw a man walking across the street near the bar. The deputy pulled up next to the individual to talk with him. When the individual began to speak, the deputy recognized him as Gingles. Gingles admitted that he was the person in the alley behind the bar. He told the deputy that he was walking home from work. After asking Gingles where he worked and where he lived, the deputy found it odd that Gingles was walking away from where he lived and back toward where he worked. The deputy decided to check with dispatch to see if Gingles had any active arrest warrants. Dispatch told the deputy that Gingles had an active warrant for his arrest. The deputy took Gingles into custody without issue and transported him to the Clay County Law Enforcement Center.

When they arrived at the law enforcement center, the deputy searched Gingles. The deputy found that Gingles had two packages taped to his legs—one on each leg. In one package he found a digital scale, a weight, a tin cup, and instructions on how to operate the scale. In the other package he found small baggies. Some of the baggies appeared clean and unused. Four of the baggies contained what was later determined to be methamphetamine. Two of the four baggies containing methamphetamine had numbers written on them. The numbers written on the baggies matched the approximate weight of methamphetamine that each baggie contained. The deputy did not recover any paraphernalia associated with personal drug use. The deputy found a total of 2.8 grams of methamphetamine on Gingles.

On June 3, 2015, Gingles was charged in a two-count complaint. Count one of the complaint charged Gingles with possession with intent to distribute a controlled

2

substance within 1,000 feet of a school under K.S.A. 2014 Supp. 21-5705(a)(3), a drug severity level 2 felony. Count two charged Gingles with possession of drug paraphernalia under K.S.A. 2014 Supp. 21-5709(b)(1), a drug severity level 5 felony.

On March 24, 2016, Gingles entered a plea agreement with the State. The State agreed to amend count one to possession of a controlled substance with intent to distribute, a drug severity level 3 nonperson felony. The State also agreed to dismiss the remaining charges with prejudice. In exchange, Gingles agreed to plead guilty or no contest to the amended count of possession of a controlled substance with intent to distribute. The parties also agreed to open sentencing.

On June 15, 2016, Gingles moved for dispositional departure. Gingles argued that substantial and compelling reasons existed to support a downward departure. He listed the following reasons in support of his motion: he had no prior felony convictions and no prior drug misdemeanors; he would be amenable to drug treatment; he had a low LSIR score indicating he was a good candidate for probation; and he had maintained employment after he was charged and was working to turn his life around. The State responded to Gingles' motion, pointing out that "[t]he Kansas Legislature, with its construction of the sentencing grid, intended people who sell drugs to be treated differently than people who just possess drugs." Thus, the State requested that the sentencing court deny Gingles' motion for dispositional departure.

On June 16, 2016, a sentencing hearing was held. At the hearing, Gingles requested a dispositional departure to probation. The State opposed Gingles' motion for dispositional departure but recommended a durational departure to 24 months' imprisonment. Gingles' motion for dispositional departure was denied. But the sentencing court ruled that substantial and compelling reasons existed to grant a durational departure. Gingles was originally facing a presumptive standard prison sentence of 49 months under the Kansas Sentencing Guidelines. With the downward durational

3

departure, however, he was sentenced to 24 months' imprisonment. Gingles filed a timely notice of appeal.

*Did the District Court Abuse Its Discretion in Denying Gingles' Motion for Dispositional Departure?*

Gingles argues that the district court erred in denying his motion for dispositional departure. K.S.A. 2016 Supp. 21-6815(a) states that "the sentencing judge shall impose the presumptive sentence provided by the sentencing guidelines unless the judge finds substantial and compelling reasons to impose a departure sentence." We define "substantial" as something real and not imagined—something with actual substance. "Compelling" is defined as when the facts of the case force the court to go beyond the ordinary or abandon the status quo. *State v. Reed*, 302 Kan. 227, 250, 352 P.3d 530 (2015).

This court reviews the grant or denial of a departure sentence under an abuse of discretion standard. *State v. Jolly*, 301 Kan. 313, 324, 342 P.3d 935 (2015). A judicial action constitutes an abuse of discretion (1) if no reasonable person would adopt the view taken by the trial court; (2) if it is based on an error of law; or (3) if it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

On appeal, Gingles specifically argues that "because Mr. Gingles was not a threat to society, he had not had the benefit of drug treatment, and was a good candidate for probation, no reasonable person [would] have denied defense counsel's request for probation." Thus, Gingles argues that the sentencing court abused its discretion.

Here, Gingles moved the sentencing court for a dispositional departure. He was originally facing a presumptive prison sentence ranging from 46-51 months. His motion listed reasons why he believed the court should depart down to probation in place of

4

prison time. At the sentencing hearing, Gingles also moved the court to grant him a durational departure to 24 months' imprisonment if the court was not inclined to grant his dispositional departure to probation. The State did not oppose the request for a durational departure and actually recommended the court sentence Gingles to 24 months' imprisonment. The sentencing court denied his motion for dispositional departure and granted his motion for durational departure. The court explained its actions:

> "So when I look at your case, Mr. Gingles, looking at—looking at just you and what you've done, if this was a simple possession case or a border box probation case, I would say that there would be grounds to allow you to be on probation.

> "This is one of those close cases. I know that because now today standing in front of me, you have quite a few things going for you that you didn't have when this case was filed, but the bottom line comes down to the underlying charge, and that this is possession with intent to distribute, and the county attorney is correct, that I have to look at what the legislature says is an appropriate sentence in a case like this and the impact that crimes like this have in our communities.

> "And the scourge in our community right now is the free flow of methamphetamine and I have to weigh what's in your best interest and what's in the best interest of the community, and I believe that there are not substantial and compelling reasons for a dispositional departure but I do believe that the county attorney is correct that there is grounds for a downward durational departure, and so for the reasons stated, I find there is a reason to depart to the sentence of 24 months."

On appeal, Gingles reasserts the same arguments that he made to the sentencing court. He argues that his motion for dispositional departure should have been granted for three principle reasons: (1) he had no criminal history; (2) he had not had the opportunity to receive any drug or alcohol treatment, which his presentence evaluation stated he would benefit from; and (3) he was a good candidate for probation. Gingles relies heavily upon a mental health and substance abuse evaluation he underwent before sentencing.

5

Specifically, Gingles asserts that "Dr. Sward, who conducted the evaluation, noted that 'the availability of [substance abuse] treatment within the correctional system is very limited.'" Gingles also contends that Dr. Sward concluded that he should be placed on probation with mandatory drug treatment and monitoring.

In evaluating Gingles' appeal, we must remember that the question before us is not whether a reasonable person would have found substantial and compelling reasons to depart. Instead, our question is whether no reasonable person would have taken the sentencing court's view in denying Gingles' motion for dispositional departure.

We begin by acknowledging the sentencing court's reasoning in denying Gingles' motion for dispositional departure. The court's reasoning highlights an important factor that Gingles seems to ignore—he was charged with and pled guilty to possession of methamphetamine *with intent to distribute*. As the sentencing court pointed out, if this was a case of simple possession, Gingles' arguments relating to drug treatment would carry more weight. Particularly, Dr. Sward's recommendations relating to drug treatment would be more persuasive. But the fact remains that this was not a case of simple possession. In fact, when Gingles was arrested the deputy who searched him found no evidence of drug use. On the other hand, the deputy found a digital scale and four individual baggies containing methamphetamine, with two of the baggies actually having the weight of methamphetamine they contained written on them. Thus, all the evidence against Gingles pointed to his intended distribution, not use, of methamphetamine.

Gingles' crime of conviction, possession with intent to distribute under K.S.A. 2014 Supp. 21-5705(a), was a drug severity level 3 felony. Had Gingles been convicted of simple possession of methamphetamine under K.S.A. 2014 Supp. 21-5706(a), he would have been presumptive probation based on his lack of criminal history and the severity level of the crime. See K.S.A. 2014 Supp. 21-5706(c)(1) ("Violation of subsection [a] is a drug severity level 5 felony."). Based on these different levels of

6

felonies, it is clear that the legislature intended to punish possession of a controlled substance with intent to distribute more severely than simple possession of a controlled substance. Accordingly, the sentencing court was reasonable in taking that fact into account.

Moreover, as the State points out, Dr. Sward's report does not "conclude that Mr. Gingles be placed on probation with mandatory drug treatment and monitoring" as Gingles asserts. Instead, the report states that the "examiner is *recommending* that Mr. Gingles be given *consideration* for the use of probation" and "[*i*]*f* probation or community corrections can be used, Mr. Gingles *should* be ordered to follow all the recommendations of his therapist or treatment team." (Emphasis added.) Thus, it is clear that Dr. Sward was simply making recommendations while recognizing that the ultimate decision as to whether Gingles was a good candidate for probation was the court's to make.

In conclusion, we cannot agree with Gingles that no reasonable person would take the view adopted by the sentencing court. Accordingly, we affirm and hold that the sentencing court did not abuse its discretion in denying Gingles' motion for dispositional departure.

Affirmed.